# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **DAVID ADCOCK, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | **Case No.: 4:05-CV-0197-RDP** |
| } | |
| **ADT SECURITY SERVICES, INC.,** } | |
| } | |
| **Defendant.** } | |

### MEMORANDUM OPINION

**I.   INTRODUCTION**

The court has before it Defendant ADT Security Services, Inc.'s ("ADT") Motion for Partial Summary Judgment Dismissing Encompass Insurance's Subrogation Interest (Doc. #12) and supporting brief (Doc. #13) filed on September 20, 2005. Plaintiffs David and Diane Adcock opposed summary judgment (Doc. #17, Doc. #18) on October 21, 2005, and ADT filed its reply (Doc. #19) on October 27, 2005. As explained more fully below, because the court concludes that ADT has met its burden on summary judgment of showing that no material factual disputes exist and that it is entitled to judgment as a matter of law, ADT's Motion for Partial Summary Judgment is due to be granted.

**II.   STATEMENT OF FACTS**

On or about May 11, 1999, Plaintiff David Adcock signed a commercial agreement (the "Agreement") for the purchase, installation, and monitoring of a home burglar alarm system with ADT. (Doc. #13 at Ex. A at 1). The signature page of the Agreement includes the following statement immediately above the agent's signature line:

> **THE CUSTOMER STATES THAT, BEFORE SIGNING THIS AGREEMENT, HE/SHE HAS READ BOTH SIDES OF THIS AGREEMENT AND UNDERSTANDS ALL TERMS AND CONDITIONS OF BOTH THIS AND THE REVERSE SIDE OF THIS AGREEMENT, IN PARTICULAR, PARAGRAPH 1, LIMITED WARRANTY, AND PARAGRAPH 7, LIMIT OF LIABILITY.**

(*Id.*). Paragraph 7 of the "**GENERAL TERMS AND CONDITIONS**" section of the Agreement provides in relevant part:

> **LIMIT OF LIABILITY - IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES. CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURY OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION.**

(Doc. #13 at Ex. A at 2).

Mr. Adcock paid an installation and connection fee of $99.00 by check at the time he signed the Agreement. (Doc. #13 at Ex. A at 1). With respect to security service, the Agreement indicates that Mr. Adcock elected to be billed monthly at a rate of $25.99 and that "service commences when the necessary connection is effected." (*Id.*).

Plaintiffs' Complaint alleges, *inter alia*, that:

> On or about May 11, 1999, Plaintiffs contracted with Defendant, ADT, for the purchase, installation, servicing and monitoring of an electronic security system, hereinafter,"the system", at the subject premises, and the installation thereof began in or around that time.

(Doc. #1 at Compl. ¶ 8). Despite "multiple unsuccessful installation attempts," the system did not operate. (*Id.* ¶ 9). Plaintiffs continually advised ADT about the malfunctioning system. (*Id.*).

"On or about January 3, 2003, a fire originated in a closet where the power box for the system was located." (*Id.* ¶ 10). The fire destroyed Plaintiffs' home and allegedly caused them damages and injuries in excess of $250,000.00. (*Id.* ¶ 11). As a settlement of all insurance claims relating to the January 3, 2003 fire, Plaintiffs accepted a payment from Encompass Insurance ("Encompass"), the insurer under Plaintiffs' general homeowner's policy, in the amount of $196,711.00. (Doc. #13 ¶ 7; Doc. #13 at Ex. C at #4). Encompass obtained a subrogation interest from Plaintiffs by virtue of the settlement payment. (Doc. #13 ¶ 8).

### III.   STANDARD OF REVIEW ON SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If, as is the case here, the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. Second, the moving party can affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest

on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

**IV.   ANALYSIS**

Contrary to Plaintiffs' opposition to summary judgment, the Agreement between Mr. Adcock and ADT is a valid written contract. Therefore, the issue for the court to determine is whether the waiver of subrogation interest provision in the Agreement that ADT intends to enforce against Mr. Adcock's insurer, Encompass, is valid and enforceable.

As a general proposition, the court notes that, under Alabama law, a subrogee's rights are limited to rights of its subrogor:

> The rule is well established that a subrogee can acquire no greater rights than those possessed by the subrogor whose rights he asserts. *Home Insurance Co. v. Stuart-McCorkle*, 291 Ala. 601, 285 So.2d 468 (1973). That being so, it appears that there exists no genuine issue of material fact in the instant case. Plaintiff's subrogor had admitted liability and therefore could not maintain an action against defendants. Plaintiff, as subrogee, cannot rise above the rights of its subrogor.

*Motors Ins. Co. v. Southern Bell Telephone Co.*, 431 So.2d 1308, 1309 (Ala. Civ. App.1983).

In its summary judgment motion, ADT relies heavily upon the *Garlock Equip. Co. v. Industrial Risk Insurers*, 576 So.2d 652 (Ala. 1991) and *St. Paul Fire and Marine Ins. Co. v. Universal Bldg. Supply*, 409 F.3d 73 (2d Cir. 2005) decisions. Both *Garlock* and *St. Paul* involve the allocation of risk in the legally specialized construction industry among builders/owners, general contractors, and subcontractors, who share contractual and commercial relationships either directly or indirectly. More specifically, the cases address the effect of a waiver of subrogation interest clause in the commercial context of builder's risk insurance applicable to a particular project and/or property, and finds such a provision to be enforceable.

However, similar to the parties, the court has been unable to locate a reported Alabama decision that directly addresses whether a waiver of subrogation interest contained in an alarm services agreement is enforceable against a homeowner's insurer. The court is, of course, familiar with the line of Alabama cases that recognize the enforceability of a waiver of subrogation provision that is included in a release or settlement agreement arising in a post-loss situation. *See, e.g., Commercial Union Ins. Co. v. Blue Cross and Blue Shield of Alabama,* 540 So.2d 1368, 1370 (Ala. 1989) ("[O]ur courts have adopted the rule that an insurance company's right to subrogation is lost as against a wrongdoer who, without notice of the insurer's rights, settled with and was released from liability by the insured.") (citing *Miller v. Auto-Owners Ins. Co.*, 392 So. 2d 1201 (Ala. Civ. App.1981)).

The court has also located two fairly recent opinions from the Supreme Court of Alabama that have upheld the validity of limitation of liability provisions included in alarm services contracts. *See Fox Alarm Company, Inc. v. Wadsworth*, 913 So. 2d 1070, 1077 (Ala. 2005) ("[W]e hold that the limitation-of-liability clause found in the contract is enforceable and that the trial court erred when it refused to limit Fox Alarm's damages to $250 and twice overruled Fox Alarm's objections to the instruction on damages."); *Saia Food Distributors and Club, Inc. v. SecurityLink from Ameritech, Inc.*, 902 So. 2d 46, 55 (Ala. 2004) ("The parties' agreement to limit SecurityLink's exposure is enforceable.").[1]  Although not addressing the waiver of subrogation in a pre-loss situation, these cases are instructive because they recognize that principles of freedom of contract

---

[1] In reaching its holding, the SecurityLink court further reasoned, "We do not interpret this language as allowing SecurityLink to escape all liability for any breach of its contract with Saia Food or for SecurityLink's negligence, if any. SecurityLink and Saia Food merely agreed to limit the amount of damages for which SecurityLink could be held responsible." 902 So. 2d at 55.

in risk allocation exist in the context of alarm services contracts so long as the agreement is not unconscionable. *See Fleming Farms v. Dixie AG Supply, Inc.*, 631 So. 2d 922, 926 (Ala. 1994) (determining that plaintiffs had failed to meet their burden of showing unconscionable nature of limitation clause upon *prima facie* showing by party seeking to enforce it that it was not unconscionable).

The court has also found cases from other jurisdictions in which the waiver of a subrogation interest in the context of an alarm services agreement has been found to be enforceable. *See, e.g., Hartford v. Burns International Security Servs., Inc.*, 526 N.E. 2d 463 (Ill. App. 1988). In *Burns*, in upholding the validity of a waiver of subrogation provision, the Illinois Appellate Court stated:

> Here, we are dealing with two corporations which voluntarily entered into a contract at arm's length, with full freedom to do so. The waiver provision in question here is not a true exculpatory clause. It is merely an agreement between the parties to shift most of the risk of loss to a third party, namely: the Exchange's insurance company, *i.e.*, The Hartford. The clause did not immunize Burns from all liability nor did it require the Exchange to give up all claims against Burns. The Exchange gave up only its rights against Burns to the extent that it was insured. Thus, the waiver provision is legal in New York; it does not violate Illinois public policy; and the outcome of the litigation would be the same under New York law and Illinois law.

*Burns*, 526 N.E. 2d at 466. The court finds the reasoning in *Burns* and other similar cases to be persuasive. *See e.g., Shaer Shoe Corp. v. Granite State Alarm, Inc.*, 262 A.2d 285, 287-88 (N.H. 1970) ("Although the insurer had a right to subrogation, this right could be waived. We hold that the clause in the policy entitled 'Subrogation Clause' quoted above permitted the insurer's subrogation rights to be defeated to the extent, but only to the extent, that Shaer, prior to the loss, had released the defendant from liability.") (internal citations omitted). In the absence of an Alabama Supreme Court holding to the contrary, and particularly in light of other Alabama cases that

7

have upheld such subrogation waivers in other contexts, the court makes its "*Erie* guess"[2] that the waiver here is enforceable against Encompass as it relates to the breach of contract and negligence claims asserted by Plaintiffs. Therefore, ADT's Motion for Partial Summary Judgment is due to granted as it relates to subrogation rights stemming from the liability for claims from which Plaintiffs released ADT, *i.e.*, breach of contract and negligence.

## V.  CONCLUSION[3]

As explained above, the court concludes that ADT has met its burden on summary judgment of demonstrating that no disputed issues of material fact exist and that it is entitled to judgment as a matter of law on the waiver of subrogation interest relating to negligence and breach of contract. Accordingly, ADT's Motion for Partial Summary Judgment is due to be granted.

**DONE** and **ORDERED** this ___10th___ day of January, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[2]*Erie R.R. Co. v. Tompkin*, 304 U.S. 64, 78-80 (1938).

[3]The court does not reach the issue of waiver of subrogation as it relates to any wantonness claim against ADT. Despite, Plaintiffs' response in discovery that they might later pursue a claim for wantonness, their Complaint includes the term "recklessness and/or wantonness." (Doc. #1 at Compl ¶ 16). Moreover, in opposing summary judgment, Plaintiffs have relied upon ADT's alleged wantonness. Furthermore, this case has the additional wrinkle of Plaintiffs' complaining that the ADT equipment may very well have been the source of the fire (as opposed to the equipment's failure to properly detect a fire). Under such circumstances, the court would prefer to address the viability of Plaintiffs' wantonness claim based upon all the evidence at the close of discovery and with the benefit of further briefing by the parties, rather than at this early stage.